**NOT FOR PUBLICATION**                                                           **(Docket No. 13)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| UNITED ASSOCIATION, LOCAL UNION NO. 322 PENSION FUND et al., | : : : : | |
| Plaintiffs, | : : | Civil No. 10-1815 (RBK/JS) |
| v. | : : : | **OPINION** |
| JOSEPH P. SCHMIDT, SR., an individual, "HARRY C. WITTMAIER, INC." a/k/a HARRY C. WITTMAIER, a partnership, and JOSEPH P. SCHMIDT, SR., INC., a New Jersey Corporation, | : : : : : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This matter arises out of the alleged fraudulent transfer of funds by a debtor. In this case, a corporate entity bearing the name Harry C. Wittmaier, Inc. entered into a collective bargaining agreement with Plaintiffs United Association, Local Union No. 322 Pension Fund et al.[1] After the two entities formed the agreement, Plaintiffs filed an involuntary bankruptcy petition against Harry C. Wittmaier, Inc. under Chapter 7 of the Bankruptcy Code, and the President of Harry C. Wittmaier, Inc. filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. Now, Plaintiffs seek payment pursuant to the collective bargaining agreement. Presently before the Court is the Motion to Dismiss filed by Defendants Harry C. Wittmaier, Inc., Joseph P.

---

[1] The following individuals and entities are also listed as plaintiffs in this lawsuit: United Association, Local Union No. 322 Health and Welfare Fund; U.A. Local 322 Vacation and Holiday Fund; United Association, Plumbers and Pipefitters Local 322 Annuity Fund; United Association, Plumbers and Pipefitters Local 322 Education Fund (collectively the "Funds"); Local Union No. 322 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO (the "Union"); U.A. Local 322 Political Action Committee; and James Kehoe.

1

Schmidt, Sr., and Joseph P. Schmidt, Sr. Inc. for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is granted in part and denied in part.

I.   BACKGROUND

   A. Harry C. Wittmaier, Inc.

Harry C. Wittmaier, Inc. ("HCW") is a corporation formed in the State of New Jersey. (Compl. ¶ 11). HCW dissolved in December 1993. (Id.). Defendant Joseph P. Schmidt, Sr. ("Schmidt") was an owner and/or officer of HCW. (Compl. ¶ 9). The Complaint alleges that after 1993, "[t]he name 'Harry C. Wittmaier, Inc.' has . . . been used in the conduct of an unincorporated business by Schmidt, as a sole proprietor or general partner, from 1993 (or earlier) . . . [and] from 2002 to 2008 and beyond." (Compl. ¶ 11).

   B. Schmidt's Sale to DeRitis

Schmidt is also the former owner of Joseph P. Schmidt, Sr., Inc. ("JPSS, Inc. t/a HCW, Inc.").[2] In June 2002, Schmidt sold ninety percent of his ownership interest in JPSS, Inc. t/a HCW, Inc. to Charles DeRitis, the President of JPSS, Inc. t/a HCW, Inc., for $1,100,000.00 and $338,000.00 of the profit earned by JPSS, Inc. t/a HCW, Inc. during 2002. At the time of the sale, Schmidt was an officer and/or director of JPSS, Inc. t/a HCW, Inc. Under the terms of the sales agreement, DeRitis was required to: (1) "keep in effect all life insurance policies on the life of [Schmidt]," (id. ¶ 15); (2) "keep in effect medical insurance for the benefit of [Schmidt] . . ." (id.); (3) "cause [JPSS, Inc. t/a HCW, Inc.] to employ Andrew Schmidt as General Manager", (id.); and (4) "cause [JPSS, Inc. t/a HCW, Inc.] to maintain and pay for the Nextel telephone . . .

---

[2] Plaintiff's Exhibit 7, the State of New Jersey Business Registration Certificate, for Joseph P. Schmidt, Sr. Inc., lists "Joseph P. Schmidt, Sr., Inc." as the taxpayer name, and "Harry C. Wittmaier Inc." as the trade name. (Pl.'s Br. Ex. 7 Business Registration Certificate). As a result, the Court refers to Joseph P. Schmidt, Sr., Inc. as "JPSS, Inc. t/a HCW, Inc."

2

of [Schmidt] . . . ", (id.).

In addition to the aforementioned terms, the sales agreement required DeRitis to provide Schmidt with the following forms of collateral. First, DeRitis agreed to maintain a life insurance policy for $1,185,000.00 with either Schmidt or JPSS, Inc. t/a HCW, Inc. as the named beneficiary. Second, DeRitis agreed to give as collateral all of the present and future property of JPSS, Inc. t/a HCW, Inc., including all receivables such as contracts, equipment, inventory, tangible and intangible property. Third, the agreement required DeRitis to grant a first security interest in all of the corporate stock of JPSS, Inc. t/a HCW, Inc., to include the shares sold to DeRitis plus ten percent of the corporate stock owned by Deritis, as well as all JPSS, Inc. t/a HCW, Inc. receivables. Fourth, DeRitis was required to give Schmidt a second security interest and mortgage in his personal residence.

After the parties entered into the sales agreement, Schmidt remained an officer or employee of JPSS, Inc. t/a HCW, Inc.

### C. The Collective Bargaining Agreement

On March 1, 2005, DeRitis signed a collective bargaining agreement with the Union (the "Labor Contract"). The Complaint alleges that DeRitis signed the Labor Contract using the title "Harry C. Wittmaier, Inc." with the "actual or apparent authority of JPSS, Inc. [t/a HCW, Inc.] and/or Schmidt." (Compl. ¶ 18). The Complaint further alleges that HCW entered into agreements with Union representatives (the "Trust Agreements"). Under the terms of the Labor Contract and the Trust Agreements, HCW agreed to: (1) "make full and timely payments on a monthly basis to the Funds Committee and the Union," (Compl. ¶ 20); (2) "file monthly remittance reports with the Funds, IAF, PAC and Union detailing all employees or work for which contributions were required under the Labor Contract," (id.); (3) "produce, upon request

by the Funds, IFA, PAC and Union individually or jointly, all books and records deemed necessary to conduct an audit of HCW's records concerning its obligations to the Funds, IAF, PAC and Union," (id.); and (4) "pay liquidated damages and all costs of litigation, including attorneys' fees, expended by the Funds, IAF, PAC and Union to collect any amounts due as a consequence of HCW, Inc.'s failure to comply with its contractual obligations," (id.).

### D.  The UCC Financing Agreement

The Complaint alleges that on November 14, 2007, DeRitis, acting as a representative of JPSS, Inc. t/a HCW, Inc., signed a security UCC Financing Statement (the "UCC Financing Statement"). The UCC Financing Statement stated that Schmidt owned a security interest in all of JPSS, Inc. t/a HCW, Inc.'s inventory, corporate stock, accounts receivables, and contracts. Prior to November 14, 2007, there was no public record of a transfer of JPSS, Inc. t/a HCW, Inc. property to Schmidt under the Sales Agreement, and the Complaint alleges that there is currently no public record or filing of any security interest in the assets of HCW. Moreover, the Complaint alleges that at the time DeRitis filed the UCC Financing Statement, Harry C. Wittmaier, Inc. and/or JPSS, Inc. t/a HCW, Inc. owed Plaintiffs $164,316.64 under the terms of the Labor Contract. The Complaint alleges that DeRitis was insolvent on November 14, 2007, and HCW was insolvent on or before November 14, 2007.

In February 2008, DeRitis discontinued his employment with JPSS, Inc. t/a HCW, Inc. After DeRitis's departure, Schmidt took control over all of JPSS, Inc. t/a HCW, Inc.'s assets.

### E. The Bankruptcy Actions[3]

On February 5, 2008, DeRitis filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. (Doc. No. 13 Ex. A). In the petition, DeRitis listed $838,908.35 in assets and $3,623,682.11 in liabilities. (Id. at 6). Among the assets detailed in DeRitis' petition, he claimed a 100% ownership interest in the stock of JPSS, Inc. t/a HCW, Inc., but valued the stock at $0.00. (Id. at 10). Furthermore, in the petition, DeRitis claimed that he owed Schmidt a total of $923,143.00. (Id. at 15). DeRitis also claimed that he did not owe Plaintiffs any unsecure debt; rather he claimed that JPSS, Inc. t/a HCW, Inc. was the party indebted to Plaintiffs. (Id. at 71). On April 8, 2008, the Trustee filed a notice of abandonment. (Doc. No. 13 Ex. B). The bankruptcy judge entered an order of abandonment on June 23, 2008 with leave to "return without prejudice and reopen the bankruptcy for the Trustee to administer any undisclosed assets that were not administered." (Doc. No. 13 Ex. D, at 2).

On June 5, 2008, Plaintiffs filed a Chapter 7 involuntary bankruptcy petition against JPSS, Inc. t/a HCW, Inc. (Doc. No. 13 Ex. D). The trustee of record, Mr. John W. Hargrave, filed a report recommending dismissal of the case because the total secured liens on JPSS, Inc. t/a HCW, Inc.'s property exceeded its assets. (Doc. No. 13 Ex. F). Mr. Hargrave made that recommendation based upon his conclusion that Schmidt held a security interest in all of JPSS, Inc. t/a HCW, Inc.'s assets for the $923,143.00 that DeRitis owed him under the June 2002 promissory note, and the fact that 1st Colonial Bank held a valid security interest in JPSS, Inc. t/a HCW, Inc.'s assets for a total of $403,000.00. (Id.). The bankruptcy court dismissed the

---

[3] On a motion to dismiss, a court must accept as true all of the allegations in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted). However, in addition to the allegations in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing [in] the record of the case." Keystone Redevelopment Partners, LLC v. Decker, No. 10-1054, 2011 WL 43707, at *5 (3d Cir. Jan. 07, 2011) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)). Because bankruptcy filings are matters of public record, the Court will consider them on Defendants' motion to dismiss.

involuntary Chapter 7 proceedings against JPSS, Inc. t/a HCW, Inc. on September 29, 2009. (Doc. No. 13 Ex. H).

### F. The Pending Action

On April 8, 2010, Plaintiffs filed the Complaint. The Complaint alleges: (1) breach of contract by Plaintiffs against Schmidt and HCW (Count I); (2) failure to pay amounts due to pursuant to the Labor Contract and Trust Agreement in violation of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145 et seq., by Funds against HCW and Schmidt (Count II); (3) breach of contract by Plaintiffs against JPSS, Inc. (Count III); (4) failure to pay amounts due to Plaintiffs pursuant to the Labor Contract and Trust Agreement in violation of ERISA by Funds against JPSS, Inc. (Count IV); (5) fraudulent conveyance under N.J. Stat. Ann. § 25:2-25(a) by Plaintiffs against Schmidt (Count VII)[4]; (6) fraudulent conveyance under N.J. Stat. Ann. § 25:2-25(b) by Plaintiffs against all defendants (Count VIII); and (7) conversion against Schmidt (Count IX). Defendants move to dismiss Counts I, II, VII, VIII, and IX pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The parties submitted their respective briefs and the motion is now ripe for review.

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief may be granted. With a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler, 578 F.3d at 210 (internal quotations omitted). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true,

---

[4] The Complaint fails to allege a Count V or VI.

to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making that determination, a court must conduct a two-part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

### III. DISCUSSION

#### A. General Partnership Liability (Counts I and II)

The parties dispute whether Schmidt is liable for HCW's debts as a general partner.  The Complaint alleges that Schmidt continued to operate HCW as a sole proprietorship from 1993 until 2002.  The Complaint further alleges that Schmidt operated HCW as a general partnership with DeRitis bearing the name "Harry C. Wittmaier, Inc." when he sold his 90% interest in JPSS, Inc. t/a HCW, Inc. to DeRitis in 2002.  Plaintiffs claim that the provisions of the sales agreement gave Schmidt continued control of JPSS, Inc. t/a HCW, Inc. after the sale.  Defendants argue that because the Complaint fails to allege facts sufficient to show that Schmidt and DeRitis formed a general partnership in 2002, Plaintiffs' claims against Defendants based on his alleged control of HCW should be dismissed.  The Court finds that although the Complaint properly alleges that Schmidt was liable for HCW's debts as a sole proprietor after the company dissolved in 1993,

Counts I and II fail because the Complaint fails to allege facts sufficient to demonstrate that Schmidt created a general partnership with DeRitis in 2002.

First, the Court finds that the Complaint alleges facts sufficient to demonstrate that Schmidt continued to operate HCW as a sole proprietorship after its dissolution in 1993. Under New Jersey law, "[a] dissolved corporation exists solely to prosecute and defend suits, and not for the purpose of continuing the business for which it was established." Lancellotti v. Maryland Cas. Co., 617 A.2d 296, 298 (N.J. Super. Ct. App. Div. 1992) (citing Leventhal v. Atl. Rainbow Painting Co., Ltd., 172 A.2d 710, 713 (N.J. Super. Ct. App. Div. 1961)). "[P]ersons who carry on the business of a corporation . . . after the charter has expired, or after dissolution, become personally liable as general partners." Id. (citing Leventhal, 172 A.2d at 713)).

The Complaint alleges:

> Defendant, "Harry C. Wittmaier, Inc.", also known as Harry C. Wittmaier, ("HCW") is a general partnership formed by Schmidt and Charles DeRitis. "Harry C. Wittmaier, Inc." was the registered name of a New Jersey corporation which was dissolved in or about December 1993. The name has since been used in the conduct of an unincorporated business by Schmidt, as a sole proprietor . . . from 1993 (or earlier) and, with DeRitis from 2002 to 2008 or beyond."

(Compl. ¶ 11) (emphasis added). Thus, accepting all of the allegations in the Complaint as true, Schmidt was the president of HCW before it dissolved in 1993. After the corporation dissolved in 1993, Schmidt continued to conduct business using the name "Harry C. Wittmaier, Inc." Because the Complaint alleges that Schmidt continued to conduct the business of HCW after it dissolved in 1993, Schmidt is liable for the company's debts. Lancellotti, 617 A.2d at 298.

Second, having determined that Schmidt was liable for HCW's debts after the company dissolved in 1993, the Court must analyze whether Schmidt and DeRitis formed a general partnership in 2002 when they entered into the sales agreement for Schmidt's ownership interest

in JPSS, Inc. t/a HCW, Inc.  In New Jersey, the principles governing general partnerships are a combination of both statutory and case law.  Under the New Jersey Uniform Partnership Act (1996) ("UPA"), N.J. Stat. Ann. 42:1A-1, et seq., a partnership is "an association of two or more persons to carry on as co-owners of a business for profit . . . ."  N.J. Stat. Ann. 42:1A-2.  The UPA defines a partnership agreement as "the agreement, whether written, oral or implied, among the partners concerning the partnership, including amendments to the partnership agreement."  Id.  While parties may form a partnership by signing a formal partnership agreement, "a partnership can be established in fact, arising out of contract, or implied through the parties' conduct."  Spitz v. Koplitz, 2007 WL 486742, at *3 (N.J. Super. Ct. App. Div. 2007).  Moreover, a partnership may be "established by estoppel, where a third party has relied on representations of partnership, whether or not such partnership existed."  Id. (citing Kozlowski v. Kozlowski, 395 A.2d 913, 917 (N.J. Super. Ct. Ch. Div. 1978), aff'd 403 A.2d 902 (N.J. 1979)).  The party alleging the existence of a partnership has the burden of proving the partnership.  Id. (citing Fenwick v. Unemployment Compensation Comm'n, 44 A.2d 172, 175 (N.J. 1945)).  If the plaintiff establishes that a partnership exists, all parties to the partnership are jointly and severally liable for the partnership's obligations.  N.J. Stat. Ann. 42:1A-18(a).

In order to determine whether the parties' conduct creates a partnership, courts consider the following factors:  (1) intent to form a partnership agreement; (2) obligation to share profits and losses; (3) ownership and control of the partnership's property and business; (4) community of power and administration; (5) language used in the partnership agreement; (6) conduct of the parties toward third parties; and (7) rights of the parties upon dissolution.  Eagan v. Gory, 374 Fed. App'x 335, 338-39 (3d Cir. 2010) (citing Tuxedo Beach Club Corp. v. City Fed. Sav. Bank, 749 F. Supp. 635, 646-47 (D.N.J. 1990)); Fenwick, 44 A.2d at 174-75.  An alleged agreement

that fails to meet a number of those factors does not constitute a partnership agreement. Aequus Tech., LLC v. gh, LLC, No. 03-5139, 2009 WL 2526697, at *4 (D.N.J. Aug. 17, 2009); Fenwick, 44 A.2d at 175; Am. Fire & Casualty Ins. Co. et al. v. Manzo et al., 788 A.2d 925, 929-30 (N.J. Super. Ct. App. Div. 2002) (finding that party failed to prove existence of partnership when only evidence of partnership between two persons was that they owned a parcel as joint tenants by the entirety); Presten v. Sailer, 542 A.2d 7, 14 (N.J. Super. Ct. App. Div. 1988) (holding that party failed to establish the existence of a partnership because parties did not intend to share profits).

Applying the Fenwick factors to the facts of this case, the Court finds that Schmidt and DeRitis did not form a general partnership in 2002. With respect to the first Fenwick factor, the Complaint fails to allege that Schmidt or DeRitis intended to enter into a partnership agreement. Although the Complaint alleges that Schmidt and DeRitis entered into an agreement to sell Schmidt's ownership interest in JPSS, Inc. t/a HCW, Inc., the Complaint fails to allege that either DeRitis or Schmidt intended for the sales agreement to constitute a partnership agreement. Accordingly, the first Fenwick factor favors a finding of no general partnership. Regarding the second Fenwick factor, the Complaint fails to allege that Schmidt has a right to share the profits and losses of JPSS, Inc. t/a HCW, Inc. When the parties entered into the sales agreement, Schmidt forfeited his ownership interest in the stock of JPSS, Inc. t/a/ HCW, Inc. in exchange for a payment of $1,185,000.00 plus $338,000.00 of the earnings of JPSS, Inc. t/a HCW, Inc. up to the time of sale. Because Schmidt forfeited his ownership interest in JPSS, Inc, Schmidt is entitled to repayment of a preexisting debt – not future profits of JPSS, Inc. t/a HCW, Inc. Furthermore, the Complaint fails to allege that either DeRitis or Schmidt agreed to share any of the company's losses. Thus, the second Fenwick factor favors a finding of no partnership.

The core of Plaintiffs' theory that Schmidt and DeRitis formed a partnership in 2002 relates to the third <u>Fenwick</u> factor.  Plaintiffs argue that when Schmidt sold his ownership interest in JPSS, Inc. t/a HCW, Inc. to DeRitis, he continued to control JPSS, Inc. t/a HCW, Inc. through certain provisions in the sales contract.  Specifically, Plaintiffs highlight:  (1) DeRitis' mandatory obligation to seek "advice and/or recommendation(s)" from Schmidt before hiring a "Business Consultant,"  (Compl. ¶ 15); (2) DeRitis' obligation to the operate JPSS, Inc. t/a HCW, Inc. "in the same general manner as it has been operated to the date and time of closing," (Compl. Ex. 1 ¶ 9); and (3) the fact that various documents filed by JPSS, Inc. t/a HCW, Inc. filed with the State of New Jersey refer to either "Wittmaier" or "Harry C. Wittmaier, Inc." as a signatory, (Pl.'s Br., at 24).  Defendants do not dispute Plaintiffs' claim that Schmidt continued to exert control over JPSS, Inc. t/a HCW, Inc. by requiring the company to consult Schmidt prior to hiring a business consultant or by requiring the company to operate in the same manner it operated prior to the sales agreement.  However, Defendants argue that because JPSS, Inc. t/a HCW, Inc. used the trade name "Harry C. Wittmaier, Inc.," the fact that the company filed documentation with the State of New Jersey using the trade name "Harry C. Wittmaier, Inc." does not prove Schmidt's ownership or control over the company.

The Court finds that the third <u>Fenwick</u> factor favors partnership because Schmidt and DeRitis owned a substantial amount of the property and business of JPSS, Inc. t/a HCW, Inc. and exerted a significant amount of control over JPSS, Inc. t/a HCW, Inc.  After the sale, DeRitis owned at least ninety-percent of the stock in JPSS, Inc. t/a HCW, Inc.  Moreover, although Schmidt forfeited his right to the company's stock, he maintained substantial control over the company's operations.  Specifically, Schmidt was an officer of the company, had a first right of refusal concerning business consulting, and had the authority to require the company to operate

11

the same way it operated when Schmidt owned ninety percent of the company's stock.  Thus, the third Fenwick factor favors partnership.

The fourth Fenwick factor requires the Court to assess the community of power in administration of the partnership.  The Complaint alleges that after Schmidt sold his interest in JPSS, Inc. t/a HCW, Inc., "Schmidt remained an officer or employee of JPSS."  (Compl. ¶ 16).  Defendants do not dispute that allegation.  Thus, the fourth Fenwick factor favors finding a partnership agreement.

With respect to the fifth Fenwick factor, because the Complaint fails to allege that Schmidt and DeRitis entered into a partnership agreement, the fifth Fenwick factor favors a finding of no partnership.

The sixth Fenwick factor is the parties' conduct towards third parties.  Plaintiffs point to certain documents that JPSS, Inc. t/a HCW, Inc. filed with the State of New Jersey signed by a "Harry C. Wittmaier, Inc." or "Wittmaier," and claim that "business was conducted under the HCW name rather than the JPSS, Inc. name."  (Pl.'s Br., at 25).  The Court agrees.  The allegations in the Complaint demonstrate that Schmidt and DeRitis conducted business under the name Harry C. Wittmaier, Inc.  As a result, a third party could easily mistake the conduct of HCW as the conduct of JPSS, Inc. t/a HCW, Inc. when both entities bear the same title.  Thus, the sixth Fenwick factor favors a finding of partnership.

The seventh, and final, Fenwick factor relates to the rights of the parties on dissolution.  There are no allegations in the Complaint that define the scope of the rights and obligations of the parties upon dissolution.  Thus, the Court finds that the seventh Fenwick factor favors no partnership.

In sum, because four out of seven Fenwick factors favor a finding of no partnership, the

12

Court finds that the allegations in the Complaint fail to sufficiently and plausibly plead the existence of a general partnership under New Jersey law. See Aequus Tech., 2009 WL 2526697, at *6 (finding no partnership agreement where "a substantial majority (5) of the Fenwick factors are not met . . . ."). Therefore, Counts I and II are dismissed.[5]

### B. Fraudulent Conveyance

#### 1. The New Jersey Fraudulent Transfer Act

In New Jersey, fraudulent conveyance claims are governed by the provisions of the Uniform Fraudulent Transfer Act ("UFTA"), N.J. Stat. Ann. 25:2-20 to -34. The purpose of the Act "is to prevent a debtor from placing his or her property beyond the creditor's reach." Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 488 (N.J. 1999). "Underlying the Act is the notion that a debtor cannot deliberately cheat a creditor by removing his property from "the jaws of execution." Id. Thus, "[f]raudulent conveyance claims . . . allow the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection." Id. (citing Hearn 45 St. Corp. v. Jano, 27 N.E.2d 814, 816 (N.Y. 1940)).

#### 2. Actual Fraud (N.J. Stat. Ann. 25:2-25(a))

---

[5] The Complaint alleges that "[o]n March 1, 2005, DeRitis, using the name 'Harry C. Wittmaier, Inc.' signed a collective bargaining agreement with the Union (singly or jointly, "Labor Contract"). He did so with the actual or apparent authority of JPSS, Inc. and/or Schmidt." (Compl. ¶ 18). Thus, the Court may hold Schmidt and/or HCW liable under the collective bargaining agreement only if the Complaint alleges facts sufficient to show that DeRitis had the authority to bind Schmidt and/or HCW. However, as the aforementioned analysis makes clear, DeRitis could not bind Schmidt as a general partner of HCW, and the agreement between Schmidt and DeRitis did not form a general partnership.

    Moreover, Plaintiffs failed to allege facts sufficient to state a plausible claim of agency liability. In New Jersey, "[a]n agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." Sears Mortg. Corp. v. Rose, 634 A.2d 74, 79 (N.J. 1993). "Even if a person is not an 'actual agent,' he or she may be an agent by virtue of apparent authority based on manifestations of that authority by the principal." Id. However, when determining whether a person has "apparent authority" to act on behalf of the principal, the Court must determine "whether a third party has relied on the agent's apparent authority to act for a principal." Id. (emphasis added). Here, the Complaint fails to allege that DeRitis acted as an agent of Schmidt or HCW because the Complaint does not allege that Plaintiffs relied upon DeRitis's authority to act on behalf of Schmidt or HCW.

    Therefore, because the Complaint fails to allege facts sufficient to show that DeRitis had the authority to sign the collective bargaining agreement on behalf of either Schmidt or HCW, Counts I and II are dismissed.

The Complaint alleges that JPSS, Inc. t/a HCW, Inc. fraudulently transferred assets to Schmidt. (Compl. ¶¶ 48-51). In order to determine whether a defendant is liable for actual fraud, the Court must engage in a two-step analysis. First, the Court must determine "'whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them' at some time 'but for the conveyance.'" Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 488 (quoting In re Wolensky's Ltd. P'shp, 163 B.R. 615, 626-27 (Bankr. D.C. 1993); Grand Lab., Inc. v. Midcon Labs of Iowa, 32 F.3d 1277, 1282 (8th Cir. 1994)). Second, the Court must assess "whether the debtor transferred property with . . . intent to defraud, delay, or hinder the creditor." Id. The party seeking to invalidate the conveyance has the burden of proving actual intent. Id.

In order to determine whether a debtor conveyed property with actual intent to place it beyond the reach of creditors, New Jersey courts consider the "badges of fraud" listed in N.J. Stat. Ann. 25:2-26.[6] "In determining actual intent to defraud, courts should balance the factors

---

[6] N.J. Stat. Ann. 25:2-26 provides:

In determining actual intent under subsection a. of R.S. 25:2-25 consideration may be given, among other factors, to whether:

  a. The transfer or obligation was to an insider;
  b. The debtor retained possession or control of the property transferred after the transfer;
  c. The transfer or obligation was disclosed or concealed;
  d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
  e. The transfer was of substantially all of the debtor's assets;
  f. The debtor absconded;
  g. The debtor removed or concealed assets;
  h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
  i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
  j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
  k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J. Stat. Ann. 25:2-26.

enumerated in N.J.S.A. 25:2-26, as well as any other factors relevant to the transaction." Id. at 489. "The proper inquiry is whether the badges of fraud are present, not whether some factors are absent." Id. Moreover, "[a]lthough the presence of a single factor . . . may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." Id.

The Complaint alleges that JPSS, Inc. t/a HCW, Inc. fraudulently transferred "the inventory, corporate stock, accounts receivables, contracts, etc. . . . to Schmidt . . . on November 14, 2007." Defendants argue that (1) liability under the fraud statute cannot lie against a creditor; and (2) the "badges of fraud" articulated in Gilchinsky, do not support a finding of fraud.

The Court finds that Plaintiff's actual fraud claim fails because Schmidt is not a debtor, and Schmidt did not convey any money or assets on November 14, 2007. As previously mentioned, in order to determine whether a transfer is fraudulent, the Court first find that "the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them' at some time 'but for the conveyance.'" Gilchinsky, 732 A.2d at 488. In this case, Schmidt is not indebted to JPSS, Inc. t/a HCW, Inc.; he is a creditor of JPSS, Inc. t/a HCW, Inc. The Complaint alleges that Schmidt sold ninety percent of his stock in JPSS, Inc. t/a HCW, Inc. to DeRitis. In exchange, Schmidt was entitled to receive a payment of $1,100,000.00 from DeRitis and $338,000.00 of JPSS, Inc. t/a HCW, Inc.'s profit in 2002 prior to the sale. (Compl. ¶ 15). As collateral, Schmidt also received rights to JPSS, Inc. t/a HCW, Inc.'s "[a]ccounts [r]eceivables, contracts, equipment, inventory, tangible and intangible property . . . ." (Id.). Thus, after the parties entered into the sales agreement, Schmidt was a creditor of JPSS, Inc. t/a HCW, Inc. Because Schmidt was a creditor, he cannot be liable

15

for putting an "asset beyond the reach of creditors which would have been available to them at some time but for the conveyance." Id. (internal quotations omitted).

Moreover, Schmidt cannot be liable for fraudulent conveyance because Schmidt did not transfer any assets of JPSS, Inc. t/a HCW, Inc. on November 14, 2007 – he received them. The Complaint alleges that DeRitis transferred "inventory, corporate stock, accounts receivables, contracts, etc. of JPSS, Inc. (including receivables or other assets in the HCW name) to Schmidt . . . on November 14, 2007." (Compl. ¶ 49). Because the Complaint alleges that Schmidt was the recipient of payment on a preexisting debt on November 14, 2007, Plaintiff cannot argue that he "put some asset beyond the reach of creditors." Gilchinsky, 732 A.2d at 488. Therefore, because the Complaint fails to allege that Schmidt is a debtor who fraudulently transferred assets in order to avoid payment to a creditor, Defendant's motion to dismiss Count VII of the Complaint is granted.

### 3. Constructive Fraud (N.J. Stat. Ann. 25:2-25(b))

The Complaint alleges that Defendant JPSS, Inc. t/a HCW, Inc. committed constructive fraud by transferring "substantially all of their assets to Schmidt without receiving reasonably equivalent value in exchange for the transfer," (Compl. ¶ 53), and engaging in a business transaction whereby they incurred "debts beyond [their] ability to pay as they became due," (Compl. ¶ 55). In New Jersey, a transfer is fraudulent "if the transferor made the transfer while insolvent and the transferor received less than 'reasonably equivalent value.'" N.J. Stat. Ann. 25:2-27(a); In re Markson Rosenthal & Co., Inc., No. 06-13163, 2009 WL 3763048, at *10 (Bankr. D.N.J. Oct. 27, 2009). "[A]n antecedent debt, if reasonably proportionate to the indebtedness secured, is a fair consideration to support a conveyance made by an insolvent debtor as security to one of his creditors." Johnson v. Lentini, 169 A.2d 208, 211 (N.J. Super.

Ct. Ch. Div. 1961). However, "[a] transfer is . . . fraudulent if it is made to an insider to repay an antecedent debt and the debtor is insolvent at the time or the insider had reasonable cause to believe that the debtor is insolvent." N.J. Stat. Ann. 25:2-27(b); United Jersey Bank v. Vajda, 690 A.2d 693, 694 (N.J. Super. Ct. App. Div. 1997). A director or officer of a debtor corporation is an "insider." N.J. Stat. Ann. 25:2-22(b)(1), (2).

The Complaint alleges that in November 2007, "JPSS, Inc. and/or HCW transferred substantially all of their assets to Schmidt without receiving reasonably equivalent value in exchange for the transfer in violation of N.J.S.A. § 25:2-25(b)." (Compl. ¶ 53). The Complaint further alleges that at the time of the transaction, JPSS, Inc. t/a HCW, Inc. was insolvent. (Compl. ¶ 24) (internal quotations omitted). Defendants argue that Plaintiffs' constructive fraud claim fails because: (1) as a matter of law, an antecedent debt can constitute "reasonably equivalent value," (Def.'s Reply Br., at 13) (citing Johnson v. Lentini, 169 A.2d 208, 211 (N.J. Super. Ct. Ch. Div. 1961)); and (2) "an insolvent debtor may make a payment as a 'voluntary preference' among its creditors." (Id. at 14).

The Court finds that the Complaint states a valid claim of constructive fraud under the UFTA. As previously stated, "[a] transfer is . . . fraudulent if it is made to an insider to repay an antecedent debt and the debtor is insolvent at the time or the insider had reasonable cause to believe that the debtor is insolvent." N.J. Stat. Ann. 25:2-27(b) (emphasis added). The parties do not dispute that JPSS, Inc. t/a HCW, Inc. was insolvent in 2007. Moreover, the Complaint alleges that at the time JPSS, Inc. t/a HCW, Inc. transferred its assets to Schmidt, he was an officer and/or director of JPSS, Inc., and "remained an officer or employee of JPSS, Inc. and retained control of JPSS, Inc. despite the nominal sale." (Compl. ¶¶ 9, 16). Thus, at the time of the transfer, Schmidt was an "insider" within the meaning of N.J. Stat. Ann. 25:2-22(b)(1), (2).

Finally, JPSS, Inc. t/a HCW, Inc. made the payment to satisfy a preexisting debt based upon the sales agreement formed between DeRitis and Schmidt in 2002.  Therefore, because the Complaint alleges that JPSS, Inc. t/a HCW, Inc. was insolvent when it transferred assets to an insider in order to satisfy an antecedent debt, the Complaint alleges a plausible claim of constructive fraud under the New Jersey statute.  Accordingly, Defendants' motion to dismiss Count VIII is denied.

### C. Conversion

In New Jersey, "the tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights."  Advanced Enter. Recycling, Inc. v. Bercaw, 869 A.2d 468, 472 (N.J. Super. Ct. App. Div. 2005).  In order to prove a case of conversion, a plaintiff must show that "the property allegedly converted . . . belonged to the injured party."  Sun Coast Merchandise Corp. v. Myron Corp., 922 A.2d 782, 800 (N.J. Super. Ct. App. Div. 2007) (internal quotations omitted).  Moreover, conversion applies only to interference with tangible property.  Video Pipeline, Inc. v. Buena Vista Home, Entm't, Inc., 210 F. Supp. 2d 552, 568 (D.N.J. 2002).

The Complaint alleges that "Schmidt . . . converted property of JPSS, Inc. and/or HCW to the detriment of its creditors, including Plaintiffs," and that "Schmidt knew or reasonably should have known that monies [he] received [were] not properly payable solely to him and that [his] use and retention of such amounts was not authorized."  (Compl. ¶¶ 58, 59).  To support those allegations, Plaintiffs argue that "Schmidt . . . never provided a list of the assets he took under his claimed security interest . . . . [and] only discovery will tell us whether HCW had assets taken by Schmidt."  (Pl.'s Br., at 11).  Defendants argue that Plaintiffs' claim fails because JPSS, Inc. t/a HCW, Inc.'s transfer to Schmidt was merely a lawful preference to a creditor to satisfy a

preexisting debt.

The Court finds that the allegations in the Complaint fail to state a cause of action for conversion. The Complaint fails to state a cause of action for conversion because the Complaint fails to allege that the assets Schmidt received actually belonged to HCW. In fact, Plaintiffs tacitly admits that deficiency: "Schmidt has never provided a list of the assets he took under his claimed security interest. . . . Only discovery will tell us whether HCW had assets taken by Schmidt." (Pl.'s Br., at 11) (citations omitted). The Complaint merely alleges the legal conclusion that "Schmidt . . . converted property of JPSS, Inc. and/or HCW to the detriment of its creditors, including Plaintiffs." (Compl. ¶ 16) (emphasis added). That allegation fails to allege a "plausible entitlement to relief." Iqbal, 129 S.Ct. at 1949. Because the Complaint fails to allege that HCW owned assets that Schmidt received in November 2007, the Court will dismiss Plaintiffs' conversion claim.

Moreover, even assuming arguendo that the Complaint alleged that HCW owned assets transferred to Schmidt on November 2007, Plaintiffs' conversion claim fails because the Complaint alleges that Schmidt was entitled to receive the assets DeRitis transferred to him in November 2007. In particular, the Complaint alleges that as collateral for his sale of stock to DeRitis, Schmidt was entitled to receive "all of the following present and future property, rights or assets wherever located whether now owned or hereafter arising or acquired in accounts receivables, contracts, equipment, inventory, tangible and intangible property of Joseph P. Schmidt, Sr., Inc." (Compl. ¶ 17) (emphasis added). The Complaint further alleges that on November 14, 2007, "DeRitis, purporting to act for JPSS, Inc., signed a first security UCC Financing Statement on JPSS, Inc.'s inventory, corporate stock, accounts receivables, contracts, etc. in favor of Schmidt." (Compl. ¶ 2007). Thus, it is clear from the allegations in the

19

Complaint that Schmidt was entitled to receive JPSS, Inc. t/a HCW, Inc.'s property as security for his sale of stock to the company in 2002.  Therefore, the Court will grant Defendants' motion to dismiss Count IX of the Complaint.

## III.    CONCLUSION

For the reasons discussed above, Counts I, II, VII, and IX are dismissed without prejudice.  Defendants' motion to dismiss Count VIII is denied.  An appropriate Order shall issue today.

Date:  2/24/2011                                             /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge